## HOPKINS v. SCHALLERT. (No. 5855.)

(Court of Civil Appeals of Texas. San Antonio. May 9, 1917.)

1. GUARANTY ⬤9 — WHAT CONSTITUTES — LETTERS.

Letters written to the holder of a note by the son of the maker, stating at one time that the maker was endeavoring to dispose of some property, and that when the deal was closed he would be able to take up the note, and that the writer felt sure that the addressee would get his money if he would delay for a short time before bringing suit, and subsequently stating that the deal was being closed, and that the maker would mail the money to the addressee as soon as the deal was closed, and later stating that the writer had the money and would see the addressee personally and pay the note, did not make the writer liable as guarantor for the debt of his father.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 10.]

2. GUARANTY ⬤85(1)—ACTION—PLEADING.

Where, in an action to recover from defendant as guarantor of a note, the written evidence on which it was alleged that defendant had guaranteed payment was fully set out in the petition, the petition alone could be looked to to fix defendant's liability.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 99.]

3. GUARANTY ⬤9 — ESSENTIALS OF CONTRACT.

Where letters are relied on as constituting a guaranty of payment of a note, all the essential terms of a guaranty contract must clearly appear from the writing, and nothing be left to depend on parol evidence.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 10.]

Appeal from Jim Wells County Court; L. Broeter, Judge.

Action by Robert Schallert against S. D. Hopkins. From judgment for plaintiff, defendant appeals. Reversed and rendered.

S. D. Hopkins and R. R. Fleming, both of San Antonio, for appellant. Dawson & Anderson, of Corpus Christi, and J. E. Leslie, of Edinburg, for appellee.

FLY, C. J. This is a suit by appellee against appellant to recover from him as the guarantor of a note for $750, executed by H. T. Hopkins. The cause was tried without a jury, and judgment rendered against appellant for $942.

[1] The evidence shows that H. T. Hopkins is the father of appellant; that the latter, acting on behalf of his father, as his attorney, wrote letters to the attorney of appellee, seeking a postponement of a suit on the note, in order that his father might obtain the money and pay off the note. There were numerous letters written, in several of which it was plainly said that the father was trying to raise the money. For instance, in a letter written to V. W. Taylor on February 15, 1915, appellant wrote that others were owing his father, and that if suit was postponed "my father will get the money." On February 22, 1915, appellant wrote:

"Replying to your favor of the 17th inst., I beg to advise that my father is on a deal where he is to sell the 640 acres which the $2,200 notes are secured by, and expects within a very short time to close this deal and be able to take up the Schallert note."

The $2,200 notes referred to were those left with appellee as collateral security for the $750. On March 24, 1915, appellant wrote Taylor:

"I want to thank you for waiting this long, and I want to further urge you not to file suit as yet, for my father is on a trade whereby he will realize enough to pay off your client and much more. He has closed one up here, but can't realize any money from it just now; but the one he is on now, when closed, will be ample, and means a great deal to us, and the filing of the suit might be a means of breaking up the deal, and if possible for you to wait for a while longer, say 30 days, I feel sure that you will get your money from my father."

On April 26, 1915, appellant wrote Taylor:

"Replying to your favor of the 24th inst., beg to advise my father has practically closed a deal whereby he would realize enough out of it to take care of Mr. Schallert, and it was on account of the expectation of this deal being closed, why I delayed writing. There will have to be an examination of the abstract, and curing of title, before the deal be consummated, and at that time my father will mail you the money for Mr. Schallert."

On June 24, 1915, appellant wrote V. W. Taylor:

"I beg to advise that I have the money, and have had the money for a couple of days, but inasmuch as I have to be in San Diego I am not mailing you the check, but intend to see you personally and pay off Mr. Schallert."

In another letter he stated that "we have made arrangements to get the money." The two letters are the ones relied upon as showing that appellant agreed to pay his father's debt.

All of the correspondence of V. W. Taylor and appellant must be construed together, in order to arrive at the intention of the parties. In none of the letters is there one word or sentence indicating that appellant intended to make himself liable for the debt of his father. It was his father who was seeking to sell land and to raise money to pay the debt, and the promise to pay off the debt, made by appellant after he had secured the money, does not show any assumption of the debt. He was at all times acting for his father, and he intended paying his father's money to take up the note, but changed his mind when Taylor sought to collect the attorney's fee. Patton v. Rucker, 29 Tex. 402. There is not one word in all of the correspondence tending to show that appellant intended to bind himself to pay the debt of his father, and it cannot be contended with any degree of reason that the fact that appellant had the money, but would not pay it to appellee, rendered him liable. It is not pretended that anything to the interest of appellant would arise from his payment of the note. If appellant is liable upon the letters written by him, any attorney who might

promise payment upon the part of his client would be liable personally.

[2] The written evidence upon which it was alleged that appellant had guaranteed payment of the note was fully set out in the petition. That alone could be looked to in order to fix appellant's liability, and it failed to show such liability. The petition did not state a cause of action, and that would be a fundamental error, even if none of the assignments of error should be considered.

[3] It must be kept in mind, in weighing the evidence in this case, that from the letters, construed as one whole, all the essential terms of the contract must appear, and cannot be aided by parol evidence. The whole promise must appear from the writing. Brandt, Sur. & Guar. § 92; Bohm v. Hoffer, 2 Colo. App. 146, 29 Pac. 905. If the writing indicates that the payment is to come out of a certain fund, the promise will be confined to that fund. It must be a clear and express contract, in writing, to pay the debt of another.

The judgment is reversed, and here rendered that appellee take nothing by his suit and pay all costs in this behalf expended.